UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MANUEL YAX ZAPETA,

    Petitioner,

v.                                                                                    Case No.: 2:25-cv-00697-JLB-KCD

EXECUTIVE DIRECTOR OF THE
FLORIDA DIVISION OF EMERGENCY
MANAGEMENT; ENFORCEMENT AND
REMOVAL OFFICE, MIRIMAR, FLORIDA;
ACTING DIRECTOR, IMMIGRATION AND
CUSTOMS ENFORCEMENT; and ACTING
DIRECTOR OF THE EXECUTIVE OFFICE
FOR IMMIGRATION REVIEW,

    Respondents.
_____/

## ORDER

This cause is before the Court on Petitioner Manuel Yax Zapeta's Amended Petition for Writ of Habeas Corpus (the "Amended Petition") (Doc. 4), Amended Emergency Request for Temporary Restraining Order (the "Amended Motion for TRO") (Doc. 12), and Emergency Motion for Order Directing Return of Petitioner to the United States (the "Emergency Motion for Return") (Doc. 25). For the reasons set forth below, the Court finds that the Amended Petition (Doc. 4), Amended Motion for TRO (Doc. 12), and the Emergency Motion for Return (Doc. 25) are due to be **DENIED as moot**.

## BACKGROUND

Petitioner is a Guatemalan citizen who entered the United States without inspection on January 12, 1995. (Doc. 4 at ¶ 5). He has no additional criminal history. (*Id.* at ¶ 23). On January 29, 1996, Petitioner filed a timely I-589 Application for Asylum and Withholding of Removal. (*Id.* at ¶ 14; *see* Doc. 4-1). In April 1997, an immigration judge issued an order denying Petitioner's asylum claim. (Doc. 4 at ¶ 16). Pursuant to that order, Petitioner accepted Voluntary Departure by late May 1997 with an alternative deportation order to Guatemala. (*Id.* at ¶¶ 15–16; *see* Doc. 4-3). Petitioner appealed the immigration court's decision to the Board of Immigration Appeals, which affirmed the immigration court's decision on July 13, 1998. (Doc. 4 at ¶ 17; *see* Doc. 4-4). The Board of Immigration Appeals permitted Petitioner to depart from the United States voluntarily on or before August 12, 1998—thirty days from the date of the appellate order. (Doc. 4-4 at 3). Petitioner did not voluntarily depart, making his removal order final on August 13, 1998.[1] There is no dispute that Petitioner has remained subject to the final removal order for the past 27 years.

In all events, on March 15, 2020, Immigration and Customs Enforcement ("ICE") served Petitioner with a Warrant for Arrest of Alien. (Doc. 4 at ¶ 19; *see* Doc. 4-6). Rather than execute his arrest, ICE placed Petitioner on an Order of

---

[1] In cases such as this, where a timely appeal was filed with the Board of Immigration Appeals (*see* Doc. 4 at ¶ 17; Doc. 4-4), "[a]n order of removal made by the immigration judge . . . become[s] final . . . upon overstay of the voluntary departure period granted . . . by the Board[.]" 8 C.F.R. § 1241.1(f).

2

Supervision ("OSUP").  (Doc. 4 at ¶ 18; *see* Doc. 4-5).  Petitioner complied with OSUP's reporting requirements and lawfully obtained employment authorization. (Doc. 4 at ¶ 20).  Petitioner later legally married and filed an I-130 Petition for Alien Relative ("Form I-130") through his spouse on September 3, 2024.  (*Id.* at ¶ 21; *see* Doc. 4-7).  The Form I-130 remains pending.  (Doc. 4 at ¶ 21).

On July 23, 2025, Petitioner was detained by ICE agents when he reported for his standard supervision appointment pursuant to his OSUP.  (*Id.* at 2).  Two weeks later, on August 7, 2025, Petitioner filed his Amended Petition (*id.*), arguing that Respondents violated his Fifth Amendment right to due process by revoking Petitioner's release from immigration custody pursuant to his OSUP without following the procedures required by applicable statutes and regulations.[2]  (*Id.* at 5–8).  This Court promptly ordered Respondents to file a response to the Amended Petition by 11:59 P.M. on August 8, 2025.  (Doc. 11).  On Friday, August 8, Petitioner filed an Amended Motion for TRO, notifying the Court that Petitioner had been transferred to the Alexandra Staging Facility in Alexandra, Louisiana, a known last-stop staging site for deportation flights. (Doc. 12 at 2, 5–6).[3]  The same day, Respondents filed their Response to the Amended Petition and opposition to

---

[2] Petitioner filed an initial Petition for Writ of Habeas Corpus and Emergency Injunctive Relief (the "Initial Petition") (Doc. 1) on August 6, 2025, which was rendered moot by the filing of Petitioner's Amended Petition (Doc. 4) on August 7, 2025.  The Amended Petition included information and exhibits that were not available to Petitioner when he filed the Initial Petition.  (*See generally* Docs. 4-1, 4-2, 4-3, 4-4, 4-5, 4-6, 4-7).

[3] Petitioner filed an initial Emergency Request for Temporary Restraining Order (the "Initial Motion for TRO") (Doc. 5) on August 7, 2025, which was denied without prejudice for failure to comply with Federal Rule of Civil Procedure 65(b)(1)(B).  (*See* Doc. 9).

3

the TRO, raising several threshold jurisdictional arguments. (Doc. 13). Petitioner filed his reply the next day, Saturday, August 9. (Doc. 15).

The Court maintained close contact with the parties. It was clear to the Court that counsel for Petitioner and Respondents were also in close contact. The basis of the Court's inquiries with the parties was discerning the location and custodial status of Petitioner during this fast-moving litigation while the Court addressed Respondents' myriad subject matter jurisdiction arguments.

On Monday, August 11, Respondents' counsel attempted to get clarity from ICE on Petitioner's location and custodial status but was unable to receive complete information from ICE.[4] Shortly after Respondents' counsel represented to the Court that he was unable to discern when Petitioner would be removed from the Louisiana facility, Petitioner's counsel advised the Court that ICE had already effectuated Petitioner's removal via a flight from Louisiana to Guatemala at some point in the early afternoon that day. (Doc. 28 at 4; Doc. 28-1 at ¶ 15).

Petitioner then filed his Emergency Motion for Return on August 13, 2025. (Doc. 25). At the Court's direction (Doc. 26), Respondents filed an expedited Response (Doc. 28), and Petitioner filed a Reply (Doc. 30).

---

[4] This case presented a challenging array of quickly evolving factual circumstances and myriad jurisdictional issues to navigate in a very short period of time. The Court does not doubt that Respondents' counsel representations to the Court were in good faith and that Respondents' counsel made great efforts to ascertain information from ICE. The Court also appreciates the civility and professionalism exhibited by counsel for Petitioner and Respondents throughout this litigation.

## LEGAL STANDARD

Federal courts are "courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). "[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Indeed, "[i]n the federal tandem[,] jurisdiction takes precedence over the merits. Unless and until jurisdiction is found, both appellate and trial courts should eschew substantive adjudication." *Belleri v. United States*, 712 F.3d 543, 547 (11th Cir. 2013) (internal quotations and citation omitted) (alterations in original).

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. CONST. art. III, § 2, cl. 1. An action runs afoul of this jurisdictional limitation "when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehab. Servs.*, 225 F.3d 1208, 1216–17 (11th Cir. 2000) (quoting *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993)). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot," and "dismissal is required because mootness is jurisdictional." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001). Unlike standing, mootness requires

the Court to "look at the events at the present time, not at the time the complaint was filed. . . ." *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001).

## DISCUSSION

The Court concludes that it lacks subject matter jurisdiction because this action "no longer presents a live controversy with respect to which the court can give meaningful relief." *Fla. Ass'n of Rehab. Facilities, Inc.*, 225 F.3d at 1216–17 (quoting *Ethredge*, 996 F.2d at 1175)). "As a general rule, a habeas petition presents a live case or controversy only when a petitioner is in custody."[5] *Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1289 (11th Cir. 2019); *see also* 28 U.S.C. § 2241(c)(3)).

In the immigration context, a petitioner's section 2241 habeas claim is moot when the petitioner challenges *only* the legality of his detention, and he is subsequently removed pursuant to a final removal order and released from the custody of the United States. *Compare Moore v. Ashcroft*, 251 F.3d 919, 922 (11th Cir. 2001) (finding that a petitioner's removal from the United States did not render her case moot where the petitioner also challenged her final order of removal), *with Soliman v. United States ex rel. INS*, 296 F.3d 1237, 1243 n.2 (11th Cir. 2002)

---

[5] While this general rule does not govern when a detention has a tangible "collateral consequence," "the burden remains on the petitioner to . . . demonstrat[e] that a collateral consequence of his imprisonment persists after his release." *Djadju v. Vega*, 32 F.4th 1102, 1107 (11th Cir. 2022) (internal citations omitted); *accord Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1290 (11th Cir. 2019). Petitioner did not raise a challenge to a collateral consequence of his removal in any of his filings. (*See generally* Docs. 25, 30).

(distinguishing *Moore*, and finding the case moot, on the ground that Soliman, unlike Moore, did not challenge his final order of removal).

Here, Petitioner's sole challenge is the legality of his detention. Specifically, in his Amended Petition, Petitioner claims that his detention is illegal because ICE revoked his release pursuant to an OSUP without following procedures required by law or regulation. (Doc. 4 at 5–9). Since the initiation of this litigation, Petitioner was removed from the United States to Guatemala pursuant to his final removal order. (*See* Doc. 25 at 2; *see also* Doc. 28 at 4). Petitioner did not challenge his final removal order in this litigation. He was subsequently released from the custody of the United States at some point after his flight landed in Guatemala on August 12, 2025. (Doc. 28 at 4; Doc. 28-1 at ¶ 15). Accordingly, the case or controversy—the legality of his detention—presented in this section 2241 litigation is moot, and this Court therefore lacks subject matter jurisdiction to reach the merits of Petitioner's arguments. *See Soliman*, 296 F.3d at 1244.

Lastly, there are no facts to support that ICE will again place Petitioner in custody. It is clear from ICE's swift pace from Petitioner's arrest and detention on July 23, 2025, to his arrival and release from the custody of the United States in Guatemala on August 12, 2025, that the United States has no intention to seek Petitioner out and again place him in custody. As such, the narrow exception to the mootness doctrine that his case was "capable of repetition yet evading review does not apply." *See id.* at 1243 ("Furthermore, since Soliman has been removed from the United States and there is absolutely no reason to believe that he will again be

7

detained or force-fed under the same circumstances, the narrow exception for cases that are capable of repetition yet evading review does not apply.").

## CONCLUSION

For the reasons set forth above, the Amended Petition (Doc. 4), Amended Motion for TRO (Doc. 12), and Emergency Motion for Return (Doc. 25) are **DISMISSED as moot**. The Clerk of Court is **DIRECTED** to terminate all deadlines, deny any pending motions as moot, and close the case.

**ORDERED** in Fort Myers, Florida, on August 22, 2025.

*[signature]*

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE